NO









NO. 12-08-00008-CV

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

                                                                             '     APPEAL
FROM THE 

IN THE ESTATE OF 

ETHEL E. PRATER,                                         '     COUNTY
COURT OF

DECEASED

                                                                             '     CHEROKEE
COUNTY, TEXAS





                                                      MEMORANDUM
OPINION

Kay
Keller, independent executrix of the estate of Ethel E. Prater, deceased,
appeals from the trial court’s order granting Robert K. Jones’s motion to
interpret certain provisions of Prater’s will.  On appeal, Keller presents ten
issues.  We affirm in part, and reverse in part.

Background

Ethel
E. Prater died on November 25, 2006.  In her will, she named Keller as the
independent executrix of her estate.  In section II of the will,
Prater made specific bequests to twelve individuals, but stated that “if there
should not be cash, savings and/or certificates of deposit to satisfy the cash
amounts, each [individual] would then receive their pro rata share of the
available amount.”  In section III of the will, Prater specifically bequeathed
to Jones

 

all of the common stock that I own in the business
known as “Specialty Maid, Inc.” which owns real estate (including other
assets), inventory, cash, checking accounts, certificate of deposits,
equipment, buildings, and the loan owed by Specialty Maid, Inc., to me.

 

Prater’s will
was admitted to probate, and letters testamentary were issued to Keller. 
Keller filed an inventory, appraisement, and list of claims (“inventory”),
listing as Prater’s separate property an undivided one-half interest in
“Specially Maid, Inc.,” valued at
$2,500.00.  As a claim of the estate, Keller listed a promissory note from “Specially
Maid, Inc.” to Prater valued at $79,598.88. [1]  

Jones
filed a motion alleging that there was a genuine controversy as to the
interpretation and legal effect of certain provisions of Prater’s will.  He
requested a declaratory judgment pursuant to Chapter 37 of the Texas Civil
Practices and Remedies Code.  He also requested an injunction against Keller,
asserting that his interest in the estate was threatened with irreparable harm
by Keller’s “apparent” plan to fund the specific bequests in section II of
Prater’s will after the assets of the business are sold, the estate receives
its portion from the sale, and the loan to Specialty Maid, Inc. from Prater is
repaid to the estate.  He stated further that he had no adequate remedy at law.


At
a hearing on his motion, Jones asserted that Prater bequeathed to him two
separate items: (1) all of the common stock in Specialty Maid, Inc., and (2)
the loan owed by Specialty Maid, Inc. to Prater.[2]  Jones asserted that
Prater, not Specialty Maid, Inc., owned the loan, and thus, the only possible
construction of the bequest is that Prater bequeathed to him two separate and
distinct items.  Keller disagreed, noting that the loan was not another gift,
but, instead, part of the description of Specialty Maid, Inc. Keller admitted
that the loan was not owned by Specialty Maid, Inc., but was an asset of the
estate.  Her counsel stipulated that, after the loan was repaid, Keller
intended to distribute the monies according to the terms of Prater’s will,
which included paying the obligations of the estate and the specific bequests.[3]

The
trial court granted Jones’s motion, and found that Prater bequeathed to Jones
two separate assets: (1) all of the common stock in Specialty Maid, Inc., and
(2) the loan owed by Specialty Maid, Inc. to Prater.  Further, the trial court
ordered Keller to immediately disburse the proceeds of the loan to Jones once
the loan was repaid to the estate.  Finally, the trial court enjoined Keller
from using the proceeds of the loan in any manner inconsistent with the order.  The
trial court filed findings of fact and conclusions of law, including the
following conclusions of law:

 

3.             Using the specific terms used by the
testatrix in the Last Will and Testament of Ethel E. Prater, deceased, the
decedent made two specific bequests in section III of her will specifically
bequeathing: (1) all of the common stock owned by the deceased in the business
known as “Special Made, Inc.[,]” and (2) bequeathing the separate loan owned by
the business know[n] as “Special Made, Inc.[,]” both to Robert Jones.

 

                . . . .

 

7.             Robert Jones is currently in imminent
peril of irreparable injury due to the Independent Executrix, Kay Keller’s
proposed interruption of section III of the Last Will and Testament of Ethel E.
Prater, deceased.

 

8.             To prevent the imminent peril of
irreparable injury resulting from the Independent Executrix, Kay Keller’s
proposed interruption of the will, it is necessary for Ms. Keller to be enjoined
from using the proceeds of the loan referenced in section III of the will once
repaid by “Special Made, Inc.[,]” in any manner other than immediately
disbursing said funds to Robert Jones.

 

This appeal followed.

 

Will Construction

            In her first, second, and
third issues, Keller argues that the trial court erred as a matter of law in
determining that Prater bequeathed to Jones the loan owed by Specialty Maid,
Inc. to Prater.  She also contends that the trial court erred as a matter of
law in ordering her to disburse the proceeds of the loan to Jones because the
loan was not bequeathed to Jones. 

Applicable
Law

            In
construing a will, the court’s focus is on the testatrix’s intent.  San Antonio Area Found. v. Lang, 35 S.W.3d 636, 639 (Tex. 2000).  This intent must be ascertained from the language found within the four
corners of the will.  Id.  Determining a testatrix’s
intent from the four corners of a will requires a careful examination of the
words used.  Id.  If the will is unambiguous, a court should not
go beyond the will’s specific terms in search of the testatrix’s intent.  Id .  In other words, when there is no dispute as to what the written
words in a will mean, extrinsic evidence cannot be received (1) to show that
the testatrix intended something outside of or independent of such written
words; (2) to add words to those in the will; (3) to contradict the language in
the will; or (4) to take words away from those in the will.  See In re Estate
of Schiwetz, 102 S.W.3d 355, 363-64 (Tex. App.—Corpus Christi 2003,
pet. denied) (citing Huffman v. Huffman, 161 Tex. 267, 270-73,
339 S.W.2d 885, 888-89 (1960)).  

Whether
a will is ambiguous is a question of law for the court.  Steger v.
Muenster Drilling Co., Inc., 134 S.W.3d 359, 373 (Tex. App.—Fort Worth
2003, pet. denied).  A will is ambiguous only when the application of
established rules of construction leaves its terms susceptible to more than one
reasonable meaning.  Id.  If the court can give a certain
or definite legal meaning or interpretation to the words used, the will is
unambiguous.  Id.  Absent ambiguity, the construction of a will
is a matter of law. Parker v. Parker, 131 S.W.3d 524, 530 (Tex. App.—Fort Worth 2004, pet. denied).  We review such questions of law de novo.  Id .  When performing a de novo review, we exercise our own judgment and
redetermine each legal issue.  Quick v. City of Austin, 7 S.W.3d
109, 116 (Tex. 1998).  We will uphold conclusions of law on appeal if the
judgment can be sustained on any legal theory the evidence supports.  Canal
Ins. Co. v. Hopkins, 238 S.W.3d 549, 561 (Tex. App.—Tyler 2007, pet.
denied).  When reviewing a trial court’s judgment, the reviewing court should
render the judgment that the trial court should have rendered, except when
remand is necessary.  Tex. R. App. P. 43.3.

Wills
are accorded a liberal construction.  Holliday v. Smith, 458
S.W.2d 106, 110 (Tex. Civ. App.—Corpus Christi 1970, writ ref’d n.r.e.).  Since
the form used should be subordinated to the substance, considerable latitude is
permitted in respect to the informality with which the testatrix may have
expressed her intention, and allowance is made for awkwardness in the use of
words and in the structure of sentences.  Id.  We must
discover the general scheme of the will, and carry out the dominant or general
intent of the testatrix, as far as possible, unless such scheme contravenes an
established rule of law or public policy.  Long v. Long, 252
S.W.2d 235, 247 (Tex. Civ. App.—Texarkana 1952, writ ref’d n.r.e.).  Further,
the general intent appearing from the provisions of the will as a whole must
prevail, and any particular clause or provision which, taken alone, would
indicate a contrary intention, will yield thereto.  Id.

Courts
may not redraft a will, vary, or add provisions under the guise of construction
of the language of the will in order to reflect some presumed intent of a
testatrix.  Shriner’s Hosp. v. Stahl, 610 S.W.2d 147, 151 (Tex.
1980).  Moreover, there is no hard and fast rule that requires that language in
a will be dissected and measured with mathematical precision.  Neely v.
Brogden, 239 S.W. 192, 194 (Tex. Comm’n App. 1922).  It is always
permissible, and is in fact proper, to look beyond mere grammatical form to
what may be termed the internal evidence of the writer’s intention.  Welch
v. Straach, 531 S.W.2d 319, 322 (Tex. 1975).  The phraseology,
spelling, and punctuation are of little importance in the interpretation of
what is said in a will.  Maxey v. Queen, 206 S.W.2d 114, 117
(Tex. Civ. App.—Fort Worth 1947, writ ref’d n.r.e.). 

Analysis

            The
parties to this appeal urge that Prater’s will is unambiguous, and we agree.
Therefore, we review the will de novo.

            In
section III of her will, Prater bequeathed to Jones

all of the common stock that I own in the business
known as “Specialty Maid, Inc.” which owns real estate (including other
assets), inventory, cash, checking accounts, certificate of deposits,
equipment, buildings, and the loan owed by Specialty Maid, Inc., to me.

 

Keller argues
that, according to basic grammar, the last item in a series follows a
conjunction.  She points out that, in this specific bequest to Jones, the
conjunction “and” is placed before the description of the loan (“and the
loan owed by Specialty Maid, Inc., to me.”).  She contends further that the
nonessential clause beginning with the word “which” is a series of items, both
assets and liabilities, that describes what Specialty Maid, Inc. owns (“which
owns real estate (including other assets), inventory, . . . , buildings, and
the loan owed by Specialty Maid, Inc., to me.”).  Thus, she argues, the loan is
the last item in the series rather than a specific bequest to Jones. 
Consequently, she concludes, Prater’s only bequest to Jones was the common
stock.  Jones counters that it is undisputed that Specialty Maid, Inc. did not
own the loan, that Prater knew the business did not own the loan, and therefore
the omission of “and” before “buildings” was simply either a scrivener’s error
or “inartful grammar.”

            As
stated previously, in construing Prater’s will, our focus is on her intent
which we ascertain from the language found within the four corners of the will.
 See San Antonio Area Found., 35 S.W.3d at 639.  The
clause beginning with the word “which” in section III of Prater’s will
describes what Specialty Maid, Inc. owns, including real estate and other
assets.  Before the word “buildings,” however, there is a comma.  That comma is
followed by a conjunction, “and,” which is then followed by a description of
the loan to Specialty Maid, Inc. from Prater.  Proper grammar dictates that a
comma should be placed between all items in a series.  See Terri
LeClercq, Expert Legal Writing
152 (1995).  Thus, if we consider only the form of this section, it seems that
the loan is the last item in a list of what Specialty Maid, Inc. owns.

But
Specialty Maid, Inc. did not own the loan.  Instead, the loan is a chose in
action that was Prater’s personal property.[4]  See Tex. Prob. Code Ann. § 3(z) (Vernon
Supp. 2009); Black’s Law Dictionary 275
(9th ed. 2009).  Because the loan was Prater’s personal property, she had the
right to bequeath all the right, title, and interest in the loan that she had
at the time of her death.  See Tex.
Prob. Code Ann. § 58 (Vernon 2003).  The loan, therefore, is different
in substance from the other items in the series, i.e., items owned by Specialty
Maid, Inc.  According a liberal construction to Prater’s will, the grammatical
form of section III of her will yields to the general intent.  See Long,
252 S.W.2d at 247; Welch, 531 S.W.2d at 322.  Because the loan
was not owned by the business and was Prater’s personal property to bequeath,
the items in the series beginning with the word “which” (“which owns real
estate (including other assets), inventory, . . . , buildings, and the loan
owed by Specialty Maid, Inc., to me.”) does not include the loan owed to
Prater.  Therefore, the trial court did not err in finding that Prater
bequeathed to Jones all of the common stock she owned in Specialty Maid, Inc.,
as well as the loan owed to her by Specialty Maid, Inc.  Moreover, the trial
court did not err in ordering Keller to disburse the proceeds of the loan to
Jones once the loan was repaid.  Accordingly, we overrule Keller’s first,
second, and third issues.[5]

 

Injunction

            In
her fourth issue, Keller argues that the trial court erred in granting an
injunction against her because Jones had no entitlement, or any right, to the
loan.  In her fifth, sixth, and eighth issues, she contends that the trial
court erred as a matter of law in granting the injunction because there was no
evidence that Jones would suffer irreparable harm, had no adequate remedy at
law, and was in imminent peril of irreparable injury.

 

 

Applicable
Law

            Whether
to grant a temporary or permanent injunction is ordinarily within the sound
discretion of the trial court and, on appeal, review of the trial court’s
action is limited to the question of whether the action constituted a clear
abuse of discretion.  Webb v. Glenbrook Owners Ass’n., Inc., No.
05-07-01122-CV, 2009 WL 3135179, at *6 (Tex. App.—Dallas Oct. 1, 2009, no pet.
h.).  An applicant for injunctive relief must demonstrate (1) the existence of
a wrongful act; (2) the existence of imminent harm; (3) the existence of
irreparable injury, and (4) the absence of an adequate remedy at law.  Id.
 An injunction is not proper when the claimed injury is merely speculative;
fear and apprehension of injury are not sufficient to support a temporary
injunction.  Fox v. Tropical Warehouses, Inc., 121 S.W.3d 853,
861 (Tex. App.—Fort Worth 2003, no pet.).

Analysis

            We
have held that the trial court did not err in concluding that Prater’s special
bequest to Jones included the loan owed by Specialty Maid, Inc. to Prater.  Nevertheless,
we must determine whether the trial court abused its discretion in concluding
that Jones demonstrated he was entitled to injunctive relief.  See Webb,
2009 WL 3135179, at *6.  At the hearing, Keller argued that the loan was not
bequeathed to Jones.  As such, Keller’s counsel stipulated that, after the loan
was repaid, Keller intended to use the funds to pay the obligations and
specific bequests according to Prater’s will.  However, neither Keller or
Keller’s counsel stated that Keller would pay the obligations and specific
bequests with the loan proceeds even if the trial court determined that the
loan was bequeathed to Jones.  Fear and apprehension that Keller will continue
with her plan despite a court order to the contrary is not sufficient to
support an injunction.  See Fox, 121 S.W.3d at 861.  Because
there is no evidence of the existence of imminent harm, the trial court abused
its discretion in issuing the injunction against Keller.  Accordingly, we
sustain Keller’s eighth issue.

 

Conclusion

            Based
on our review of the record, we overrule Keller’s first, second, and third
issues, and affirm that part of the trial court’s order granting
Jones’s “Motion to Interpret Provisions of Will of Ethel E. Prater.”  However,
we sustain Keller’s eighth issue, reverse that part of the trial
court’s order enjoining Keller, and dissolve the injunction. 
Because Keller’s eighth issue is dispositive of her remaining issues, we do not
address them. See Tex. R. App. P.
47.1.

                                                                                                    
SAM GRIFFITH    

                                                                                                             
Justice

Opinion delivered December 31, 2009.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)

 









[1] 
In the record, the corporate entity in which Prater owned an undivided one-half
interest is variously referred to as “Specialty Maid, Inc.,” “Specially Maid,
Inc.,” and “Special Made, Inc.”  However, Keller notes in her brief that
despite the name variations, there is no suggestion that the references were
not to the same corporate entity.  We will refer to the corporate entity as
“Specialty Maid, Inc.”

 





[2] 
The loan from Prater to Specialty Maid, Inc. is evidenced by the promissory
note described in the inventory. However, the term “loan” is used in section
III of Prater’s will, and the terms “loan” and “proceeds” of the “loan” were
used in the trial court. For consistency, we will use the same references.





 

[3]  In substance, Keller argues
that the loan is part of the residuary estate. As such, the loan proceeds can
be used to satisfy the specific bequests in section II.





[4] 
Keller has acknowledged Prater’s ownership of the loan by listing the
promissory note in the inventory as a claim of the estate against Specialty
Maid, Inc.





 

[5]  Although the trial court’s
conclusion of law stated that Prater bequeathed to Jones “the separate loan owned
by the business” known as “Specialty Maid, Inc.,” the trial court noted that it
was using the specific terms used by Prater in her will.  However, in her will,
Prater stated that the loan was owed by the business, not owned
by the business.  Thus, we conclude that the term “owned” in conclusion of law
number 3 is a typographical error.